UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HALL,

        Plaintiff,                   Civil Case No. 14-12706
                                                  Honorable Linda V. Parker

v.

IKEA PROPERTY INC.
J.W. LOGISTICS, LLC.

        Defendants,

IKEA PROPERTY INC.
        Third Party Plaintiff

J.W. LOGISTICS, LLC.
        Third Party Defendant

_____/

**OPINION AND ORDER DENYING IKEA PROPERTY INC.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 31]**

      Presently before the court in this diversity action is Defendant IKEA Property Inc.'s ("Defendant" or "IKEA") motion for summary judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 31.) Plaintiff has filed this action asserting claims of premises liability and ordinary negligence. For reasons that follow, the Court **DENIES** Defendant's motion for summary judgment.

1

## I. Factual Background

Plaintiff asserts that he was employed by J.W. Logistics, LLC ("J.W.") to ship furniture to the homes of IKEA customers who had purchased furniture from IKEA. (Hall Dep., ECF No. 31-2 at Pg. ID 264, 268.) Each morning that Plaintiff worked at J.W., he was given a delivery checklist that identified the items that Plaintiff needed to retrieve from the J.W. warehouse, as well as the IKEA location in Canton, Michigan. (*Id.* at Pg. ID 268.) He and at least one co-worker would load the furniture onto a truck and deliver the items to IKEA customers. (*Id.*)

On the day of the incident, Plaintiff arrived at J.W. at approximately 7:30 a.m. and was given the delivery list. (*Id.* at Pg. ID 273.) Plaintiff and his coworker, Andre, loaded the furniture stored at the J.W. location onto their moving truck and subsequently drove to the IKEA location in Canton to retrieve the remaining furniture listed on the manifest. (*Id.*) Plaintiff arrived at IKEA somewhere between 8 and 9 a.m. that day. (*Id.*) The sun was out and the weather was dry. (*Id.*) Plaintiff drove the truck that day and upon arrival at IKEA, he proceeded to back the truck up to the loading dock. (*Id.* at Pg. ID 278.) He claims that the truck was aligned flush to the rubber bumpers that prevented the truck from crashing into the loading dock. (*Id.*) Plaintiff also states that IKEA allowed J.W. workers to use a steel loading dock plate to walk across the gap between the loading dock and the truck.

(*Id.*) Plaintiff contends that on the date of the accident he placed the dock plate properly and securely in position so that it did not shake and was "sturdy in the hole." (*Id.*) Shortly after securing the dock plate, an IKEA representative brought out wheeled carts with the items listed on the manifest for shipping. (*Id.*) Subsequently, Plaintiff grabbed a mirror that was placed beside the carts and proceeded to load the mirror on the truck. (*Id.*) He asserts that he loaded the mirror onto the truck first so he could strap it to the side of the truck and prevent it from breaking. (*Id.*) The mirror was between five and six feet tall, wide, and weighed approximately 40 pounds. (*Id.* at Pg. ID 278–79.)

Plaintiff asserts that loading the mirror required him to carry the mirror vertically in front of him – because it was impractical to carry it with one arm or on the mirror's side. Carrying the mirror the way that Plaintiff did obstructed his vision – Plaintiff could not see directly in front of him. (*Id.* at Pg. ID 280.)  Prior to attempting to load the mirror on the truck, Plaintiff looked at the plate and tried to align himself up with the plate (while holding the mirror) so that he could see where he should be walking. (*Id.* at Pg. ID 284.) Subsequently, Plaintiff started walking in the direction of the plate with the mirror in front of his face. (*Id.*) While walking, Plaintiff looked down at his feet; he reached the back of the truck and was able to see the metal plate. (*Id.*) Plaintiff claims that he was able to put one foot on the plate, and when he attempted to put the other foot on the plate, that foot

3

"slipped off the plate," causing plaintiff to fall and the mirror to shatter. (*Id.*) Plaintiff claims that he did not misjudge where the edge of the plate was, and that his foot just "slipped off the plate and went through the hole." (*Id.* at Pg. ID 279.)

As a result of the fall, Plaintiff fractured his left tibia and fibula. (Compl., ECF No. 28 at Pg. ID 121.) This lawsuit followed shortly after the incident. (ECF No. 28.) The metal loading plate was approximately two feet in length. (Compl., ECF No. 28 at Pg. ID No. 118.) The loading plate was placed in the middle of the gap existing between the truck and the loading dock. (*See* Hall Dep., ECF No. 31-2 at Pg. ID 279; Loading Plate Image, ECF 35-3 at Pg. ID 360.) Because the width of the plate did not expand the entirety of the loading dock, a hole in coverage existed to the left of the metal plate, and to the right of the plate as well. (*Id.*) Plaintiff contends that if the loading plate had been sufficient in length to cover gaps, the accident never would have occurred. (*Id.*) Plaintiff also claims that prior to the fall, although he never had any discussions with IKEA, he and other drivers spoke among themselves and voiced that the plate should be wider and longer. (*Id.* at Pg. ID 279.) Defendant's motion for summary judgment followed shortly after the filing of the amended complaint. (ECF No. 31.)

4

## II.     Standard of Review

### A. Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

B. **Choice of Law**

This case is before the Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and the plaintiffs' claims are based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff and Defendant agree Michigan law applies to this dispute. If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data,' " *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V. & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985)), which can include "the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*," *Ososki v. St. *771 Paul Surplus Lines,* 156 F.Supp.2d 669, 674 (E.D.Mich.2001) (internal quotation marks and citation omitted).

### III. Analysis

**A. Ordinary Negligence Claim**

Defendant asserts that Plaintiff's ordinary negligence claim should be dismissed because an injury arising from an allegedly dangerous condition on the land sounds in premises liability rather than ordinary negligence, even when a plaintiff alleges that the owner created the purported hazardous condition. (Def.'s Mot., ECF No. 31 at Pg. ID 253.) Plaintiff rejects this argument in his responsive brief, contending that because Defendant knowingly provided Plaintiff with an undersized docking plate, it knew of the potentially dangerous outcomes that might result, and that the claim accordingly sounds in both general negligence and premises liability. (Pl.'s Resp. Br., ECF No. 35 at Pg. ID 345–46.)

With respect to premises liability and ordinary negligence claims, Michigan case law holds the following:

> Courts are not bound by the labels that parties attach to their claims. *Manning v. Amerman,* 229 Mich.App. 608, 613, 582 N.W.2d 539 (1998). Indeed, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v. Adams (On Reconsideration),* 276 Mich.App. 704, 710–711, 742 N.W.2d 399 (2007). Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land. See *James v. Alberts,* 464 Mich. 12, 18–19, 626 N.W.2d 158 (2001). In the latter case, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land. *Laier v. Kitchen,* 266 Mich.App. 482, 493, 702 N.W.2d 199 (2005). If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary

negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury. *James,* 464 Mich. at 18–19, 626 N.W.2d 158.

*Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258 (Mich. Ct. App. 2012)

Having reviewed the record, it is apparent that Plaintiff's claim is certainly illustrative of an action sounding solely in premises liability. In the complaint, Plaintiff asserts that a person of ordinary intelligence would not have been able to avoid the condition of the gap; that Defendant owed Plaintiff a duty to maintain the premises and loading dock in a safe condition, free from danger; and that Defendant should have exercised reasonable care to diminish the hazards of falling through the gap by providing a sufficiently long plate to cover the gap. (Compl., ECF No. 28 at Pg. ID 118.) In the complaint, Plaintiff does not indicate whether his claim is a premises liability claim or an ordinary negligence claim, or if it is both. However, in his responsive brief, he claims that an injury can arise from a defect in the property (establishing a premises liability claim) and that the injury can also simultaneously arise from general negligence if the defendant's conduct was negligent. (Pl.'s Resp. Br., ECF No. 35 at Pg. ID 344.)

Plaintiff is correct that a claim under a premises liability theory does not preclude a separate claim "grounded on an independent theory of liability based on the defendant's conduct." *Laier v. Kitchen*, 702 N.W.2d 199, 208 (Mich. Ct. App.

8

2005). Nevertheless, "if the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence…*even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury*." *Buhalis*, 822 N.W. 2d at 258 (emphasis added). In the instant action, it is clear that Plaintiff's injury arose from allegedly dangerous condition on the land: the purportedly undersized loading dock plate. Thus, even though Plaintiff asserts that Defendant created the condition giving rise to the Plaintiff's injury – providing an undersized plate for furniture delivery workers to use – this does not change the fact that the claim sounds solely in premises liability, and consequently does not transform the claim into one for ordinary negligence.

 Plaintiff, relying on *Pernell v. Suburban Motors Co.*, 2013 WL 1748573 (Mich. Ct. App. Apr. 23, 2013) (unpublished, per curiam), asserts that IKEA knowingly provided an undersized loading plate and essentially led Plaintiff to a hazardous condition, thereby constituting conduct allowing for an independent ordinary negligence claim. (Pl.'s Resp. Br., ECF No. 35 at Pg. ID 346.) *Pernell* is an unpublished case, so it does not have any binding force in Michigan courts. *See* Mich. C.R. 7.215(C)(1) (unpublished opinion is not precedentially binding). Nevertheless, the conduct alleged by Plaintiff is not illustrative of the type of overt and affirmative conduct required to support a claim for ordinary negligence

separate from a premises liability claim as indicated in *Pernell* or *Laier*. *See Pernell v. Suburban Motors Co.*, No. 308731, 2013 WL 1748573, at *5 (Mich. Ct. App. Apr. 23, 2013); *Laier*, 702 N.W.2d at 209; *England v. Meijer, Inc.*, No. 322065, 2015 WL 6161735, at *4 (Mich. Ct. App. Oct. 20, 2015). Accordingly, the Court finds that Defendants claim is a premises liability claim and rejects Plaintiffs assertion that his claim against Defendant also sounds in ordinary negligence.

### B. Premises Liability Claim

Defendant asserts that Plaintiff's premises liability claim should be dismissed for various reasons: (1) the danger was open and obvious; (2) Defendant did not have notice of the alleged dangerous condition; and (3) Plaintiff cannot establish causation. (Def.'s Mot., ECF No. 31 at Pg. ID 229.)

In order to establish a prima facie case of negligence under Michigan premises liability law, a plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *Dybek v. Fedex Trade Networks Transp. & Brokerage, Inc.*, 997 F. Supp. 2d 767, 771 (E.D. Mich. 2014) (citing *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449, 506 N.W.2d 175 (1993)).

The duty a landowner owes an individual that enters her land depends upon whether that individual is a trespasser, licensee, or invitee. *Id.* (citing *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91–92 (2000). Both parties

agree that Plaintiff was an invitee. (Def.'s Mot., ECF No. 31 at Pg. ID No. 240; Pl.'s Resp. Br., ECF No. 35 at Pg. ID 343.) "An invitee is one who enters the land of another for a commercial purpose on an invitation that carries with it an implication that reasonable care has been used to prepare the premises and to make them safe." *Dybek*, 997 F. Supp. 2d. at 771 (quoting *O'Donnell v. Garasic*, 676 N.W.2d 213, 217 (Mich. Ct. App. 2003).

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001). This duty arises where there is "an unreasonable risk of harm caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995) (internal quotation marks and citation omitted). This duty does not extend, however, to dangerous conditions that are open and obvious unless special aspects of the condition make even an open and obvious risk unreasonably dangerous. *Lugo*, 629 N.W.2d at 386. As summarized by the Michigan Supreme Court:

> [I]f the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the

11

circumstances may be such that the invitor is required to undertake reasonable precautions.

*Bertrand*, 537 N.W.2d at 187.

### (1) Open and Obvious Condition

Defendant asserts that the loading plate was open and obvious and there were no special aspects rendering the condition unreasonably dangerous. An open and obvious condition is one " 'that an average person with ordinary intelligence would have discovered . . . upon casual inspection.' " *Wimberly v. Forman Mills, Inc.*, 574 F. App'x 621, 622 (6th Cir. 2014) (quoting *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94-95 (Mich. 2012). The Michigan Supreme Court has advised that when applying this test, "it is important for courts . . . to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Lugo*, 629 N.W.2d at 390. "The proper question is not whether *this plaintiff* could or should have discovered the [dangerous condition], but whether the [dangerous condition] was observable to the average, casual observer." *Price v. Kroger Co. of Michigan*, 773 N.W.2d 739, 742 (Mich. Ct. App. 2009) (emphasis in original) (citing *Novotny v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App. 1993); *see also Lugo*, 629 N.W.2d at 390 (explaining that the degree to which the plaintiff was paying proper attention is immaterial to the question of whether the condition of the premises was open and obvious). While the danger of a condition may generally be open and obvious,

there may be special aspects of the condition "that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe." *Bertrand*, 537 N.W.2d at 188. As the Michigan Supreme Court subsequently restated:

> Consistent with *Bertrand*, we conclude that, with regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring recovery.

*Lugo*, 629 N.W.2d at 387.

Given that Plaintiff retrieved the dock plate from Defendant upon arrival at IKEA, and properly secured the plate in its place (Hall Dep., ECF No. 31-2 at Pg. ID 278), it is blatantly apparent that Plaintiff would have discovered – and did in fact discover – the condition upon casual inspection, thus rendering condition open and obvious. However, contrary to Defendant's assertions, having reviewed the pleadings and the record in its entirety, the Court finds that a genuine issue of material fact exists as to whether the size of the metal loading dock plate provided by Defendant created an unreasonable risk of harm, despite the obviousness or the Plaintiff's knowledge of the danger of falling off of the allegedly undersized plate.

13

In *Bertrand*, the Court held that "[s]uch reason to expect harm to the visitor from known or obvious dangers may arise . . . where the possessor [of the land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id*. at 187. In this setting, the *Bertrand* Court held that the open and obvious nature of the dangerous condition does not relieve the premises owner of a duty of reasonable care, and the premises owner may be required "to warn the invitee, or to take other reasonable steps to protect him . . .." *Id*. (quoting Restatement Torts, 2d § 343A, comment f at 220).

The abovementioned situation described by the *Bertrand* Court is apposite to the case at hand. In order to get the furniture onto the truck, Plaintiff had to walk across the loading plate provided by Defendant. The loading plate supplied by Defendant left gaps on Plaintiff's left and right sides, and thus, the possibility of falling was always overhanging. Defendant had reason to expect that a delivery worker loading its furniture on its docks may be distracted from the undersized plate it provided, since a large part of a mover's focus is on lifting and not dropping the furniture they are moving. Thus, there is a genuine issue of fact as to whether Defendant breached his duty to exercise reasonable care by failing to remedy the danger by providing a wider loading plate. This issue is for the jury to

14

consider, and thus Defendant's contention that there are no special aspects rendering the open and obvious condition unreasonably hazardous fails.

### (2) Notice of Condition

Defendant next asserts that dismissal is warranted because Plaintiff cannot establish "the critical notice element of his claim." As stated previously, in a premises liability action, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of the duty caused the plaintiff's injuries; and (4) that the plaintiff suffered damages. *Kennedy v. Great Atl. & Pac. Tea Co.*, 737 N.W.2d 179, 181 (Mich. Ct. App. 2007) (further citations omitted). Thus, notice is not an element of a premises liability claim. However, a premises possessor generally owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *Lugo*, 629 N.W.2d at 386. Said duty arises if the condition is one defendant *knows or should know* the invitees will not discover, realize, or protect themselves against. *Bertrand*, 537 N.W.2d at 186 (emphasis added).

Defendant asserts that there is no way that it could have known about the hazardous condition given that Plaintiff never reported any concerns to Defendant relative to the loading plate. (Def.'s Mot., ECF No. 31 at Pg. ID 248.) Defendant cannot assert that it did not know of the dangerous condition, given that it provided

the loading dock plate that created the dangerous condition. Plaintiff during his deposition stated – and Defendant does not contest – that on the five or six occasions that Plaintiff visited IKEA's loading dock, IKEA provided the same loading plate for movers to use. (Hall Dep., ECF No. 31-2 at Pg. ID 276.) Thus, Defendant knew that the loading plate it provided was approximately two feet in length (Compl, ECF No. 28 at Pg. ID 118), and thus could not fully cover any gap between loading dock and *any* truck shipping IKEA furniture – and accordingly Defendant knew of the condition at issue in the instant action. Accordingly, Plaintiff's contention that it lacked notice, fails.

### (3) Causation

Lastly, Defendant asserts that plaintiff's premises liability claim should be dismissed because Plaintiff cannot establish proximate causation. A premises liability claim requires both cause in fact and proximate causation. *Romain v. Frankenmuth Mut Ins Co.*, 762 NW2d 911 (2009). With respect to proximate causation in the premises liability context, Michigan case law holds the following:

> " 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v. Oakwood Hosp.*, 471 Mich. 67, 86, 684 N.W.2d 296 (2004). Causation in fact requires a but-for standard. *Wilkinson v. Lee*, 463 Mich. 388, 396–397, 617 N.W.2d 305 (2000). In other words, it requires a showing that, but for the negligent conduct, the injury would not have occurred. *Wiley v. Henry Ford Cottage Hosp.*, 257 Mich.App. 488, 496, 668 N.W.2d 402 (2003). Proximate cause "normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner v. Square D*

> *Co.*, 445 Mich. 153, 163, 516 N.W.2d 475 (1994). Cause in fact requires more than a possibility of causation; while the evidence need not negate all other possible causes, it must exclude other reasonable hypotheses with a fair amount of certainty. *Craig*, supra at 87–88, 684 N.W.2d 296.

*Campbell v. Kovich*, 273 Mich. App. 227, 232-33, 731 N.W.2d 112, 116 (2006).

Defendant argues that Plaintiff cannot establish that Defendant's negligence was the proximate cause of Plaintiff's injuries, since the accident would not have occurred if Plaintiff had not held the mirror in a way that obstructed his vision. (Def.'s Mot., ECF No. 31 at Pg. ID 251.) This argument is nonsensical, given that but-for Defendant's alleged negligent conduct – providing an undersized loading plate – the fall resulting in Plaintiff's injuries would have never occurred, even if Plaintiff's visibility was impaired, because any gaps allotting for a fall would have been eliminated. Defendant is attempting to assert that Plaintiff cannot establish causation because he was also negligent, by impairing his own visibility. However, this argument is futile since Michigan follows the rule of comparative negligence. "Under comparative negligence, where both the plaintiff and the defendant are culpable of negligence with regard to the plaintiff's injury, this reduces the amount of damages the plaintiff may recover but *does not* preclude recovery altogether. *Lugo*, 629 N.W.2d at 390 (emphasis added) (further citations omitted). Correspondingly, Plaintiff's claim remains viable despite his own negligence, and Defendant's proximate causation argument therefore fails.

Accordingly, for the aforementioned reasons, the Court finds that (1) Plaintiff's cause of action is based solely in premises liability; and (2) Defendant's motion for summary judgment as to Plaintiff's premises liability claim is **DENIED**.

**IT IS SO ORDERED**.

                                                s/ Linda V. Parker
                                                LINDA V. PARKER
                                                U.S. DISTRICT JUDGE

Dated: March 17, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 17, 2016, by electronic and/or U.S. First Class mail.

                                                s/ Richard Loury
                                                Case Manager