UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HALL,

        Plaintiff,                          Civil Case No. 14-12706
                                                              Honorable Linda V. Parker

v.

IKEA PROPERTY INC.
J.W. LOGISTICS, LLC.

        Defendants,

IKEA PROPERTY INC.
        Third Party Plaintiff

J.W. LOGISTICS, LLC.
        Third Party Defendant

_____/

**<u>OPINION AND ORDER DENYING IKEA PROPERTY INC.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 39] AND GRANTING J.W. LOGISTICS, LLC.'s MOTION FOR SUMMARY JUDGMENT [ECF NO. 47]</u>**

      Presently before the Court in this diversity action is Defendant/ Third Party Plaintiff IKEA Property Inc.'s ("IKEA") motion for summary judgment, brought against Defendant/ Third Party Defendant J.W. Logistics, LLC ("J.W.") pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 39.) For reasons that follow, the Court **DENIES** IKEA's motion for summary judgment.

1

## I. Background

IKEA asserts that Hall was employed by J.W. to ship furniture to the homes of IKEA customers who had purchased furniture from IKEA. (Hall Dep., ECF No. 31-2 at Pg. ID 264, 268; Third Party Compl., ECF No. 60 at Pg. ID 830.) Each day, prior to making deliveries, Hall was given a delivery checklist that identified the items that he needed to retrieve from the J.W.'s warehouse, as well as the IKEA location in Canton, Michigan. (Hall Dep., ECF No. 31-2 at Pg. ID 268.)

On May 24, 2014, at the IKEA location in Canton, Michigan, Hall slipped off a docking plate while loading a mirror onto the delivery truck, fracturing his left tibia and fibula. (*Id.* at Pg. ID 279; ECF No. 28 at Pg. ID 121.) Subsequently, Hall sued IKEA and J.W. (ECF No. 28.)

Shortly thereafter, IKEA filed a third party complaint against J.W., asserting that a contract existed between IKEA and J.W. at the time of Hall's accident, and that pursuant to the agreement, J.W. agreed to: (1) indemnify IKEA for any damages incurred relating to J.W.'s work; and (2) obtain insurance for the benefit of IKEA. (IKEA Compl., ECF No. 60 at Pg. ID 830–31.) IKEA asserts that J.W. failed to comply with these obligations as required by the Customer Delivery Services Agreement (ECF No. 47-4 at Pg. ID 694), and accordingly, sought summary judgment for J.W.'s breach of its contractual obligations. (IKEA's Mot., ECF No. 39 at Pg. ID 421.)

J.W., in its combined responsive brief and cross-motion for summary judgment (ECF No. 39) asserts that the contractual agreement between the parties sets forth specific guidelines for resolving disputes, including a binding arbitration requirement precluding IKEA's claims against J.W. from being filed in both state and federal court. (J.W.'s Resp. Br., ECF No. 47 at Pg. ID 618.) Additionally, J.W. asserts that regardless of the arbitration clause, IKEA's claims should be dismissed because IKEA's claims do not fall under the scope of J.W.'s obligations to indemnify IKEA under the agreement. Further, J.W. in its responsive brief also seeks summary judgment against IKEA, relying on the same arguments asserted for the dismissal of IKEA's summary judgment motion.

## II.   Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

### III. Analysis

**A. Binding Arbitration Clause**

The Court must determine whether Section 26.1 of the Customer Delivery Services Agreement between IKEA and J.W. requires this Court to compel arbitration. Section 26.1 of the agreement holds the following:

> **26.1** Any disputes arising out of or in connection with this Agreement or its interpretation shall be dealt with as follows:
>
> **26.1.1** It shall be referred initially to the next Local Operational Meeting for resolution;
>
> **26.1.2** If the dispute cannot be solved during the Local Operational Meeting it shall be referred to a meeting of the Steering Committee for resolution. If the next scheduled meeting of the Steering Committee is more than one month after the relevant Local Operational Meeting, either Party may require a special meeting of the Steering Committee to be convened to consider the matter within one month after the relevant Local Operational Meeting;
>
> **26.1.3** If the dispute cannot be solved by the Steering Committee, it shall be referred as soon as possible, and, in any event, within fourteen (14) days, escalated to the managing directors of TSP and IKEA for resolution;
>
> **26.1.4** If the dispute cannot be solved by the managing directors within fourteen (14) days, then, upon written notice by either party to the other, all disputes, claims, questions or differences shall be finally settled by arbitration administered with a panel of three arbitrators. Any arbitration pursuant to the Agreement shall be conducted in and governed by the law of the State of New Jersey in accordance with the American Arbitration Association's Commercial Rules or as modified by the Parties. The award shall be final and binding on the Parties. The

>   prevailing party shall be entitled to recover reasonable costs and attorney's fees from the other party.

(Customer Deliver Services Agreement, ECF No. 47-4 at Pg. ID 694.)

### 1.  The Federal Arbitration Act governs the arbitration clause

The parties dispute whether Michigan or New Jersey arbitration law governs the arbitration clause at issue. IKEA asserts that Michigan law governs, and that under Michigan law, the arbitration clause gives rise to common-law arbitration, a procedure which permits either party to revoke its agreement to arbitrate without penalty until the time the arbitrator issues an award. (ECF No. 48 at Pg. ID 707–08.) Contrastingly, Defendant asserts that New Jersey law applies, and that nevertheless under both Michigan and New Jersey law, the agreement to arbitrate is binding and not unilaterally revocable. (ECF No. 52 at Pg. ID 737–740.)  This Court turns to *Mech. Power Conversion, L.L.C. v. Cobasys, L.L.C.*, 500 F. Supp. 2d 716, 719 (E.D. Mich. 2007) for guidance in making its determination. In *Mech. Power Conversion, L.L.C.*, the district court was faced with arguments similar to those raised by the parties in this matter concerning which body of law governs the arbitration clause. The district court held the following, in relevant part:

>   This clause requires binding arbitration. Plaintiff asserts that this clause does not require this because the Michigan Supreme Court has found that language similar to that used in this arbitration clause gives rise only to common-law arbitration, a procedure which permits either party to revoke its agreement to arbitrate without penalty until the time the arbitrator issues an award. (*See* Pl. Resp. Br. 9–10 citing *Wold Architects & Eng'rs v. Strat,* 474 Mich. 223, 713 N.W.2d 750,

6

> 754–59 (2006).) Defendant argues first that this language is sufficient to meet the requirements for statutory arbitration under Michigan law, and in the alternative that the FAA preempts Michigan's interpretation that this language calls for common law arbitration. (Def't Reply Br. 3–4.)
>
> The FAA preempts Michigan's law regarding common law arbitration. As it is undisputed that this contract "involv[es] commerce" as that definition is used in the FAA, this agreement is undoubtedly within the scope of the federal act. *See* 9 U.S.C. §§ 1 & 2. Pursuant to the Supremacy Clause, the terms of the FAA govern. U.S. Const. art. VI, cl. 2. The fact that this is an issue of contract interpretation in a case before this Court pursuant to diversity jurisdiction is immaterial; the FAA created substantive law regarding arbitration clauses that must be enforced both in state and federal courts. *Southland Corp. v. Keating,* 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("We thus read the underlying issue of arbitrability to be a question of substantive federal law: 'Federal law in the terms of the Arbitration Act governs that issue in either state or federal court.' ") quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

*Mech. Power Conversion, L.L.C. v. Cobasys, L.L.C.*, 500 F. Supp. 2d 716, 719 (E.D. Mich. 2007)

Thus, having reviewed the decision in *Mech. Power conversion, L.L.C.*, this Court holds that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq., governs the arbitration clause at issue – contrary to the parties assertion that state law governs. Section 2 of the FAA provides the following:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Federal Arbitration Act (FAA), 9 U.S.C. § 2.

Further, commerce under the statute is defined as such:

"[C]ommerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

Federal Arbitration Act (FAA), 9 U.S.C. § 1.

The FAA applies to commercial transactions governed by written agreements that provide for arbitration of disputes arising out of that transaction. *Southland Corp. v. Keating*, 465 U.S. 1, 10–11 (1984). IKEA is a major distributor of goods nationwide and J.W. ships said goods to IKEA's customers. As it is both clear and undisputed that this contract "involv[es] commerce" as that definition is used in the FAA, this agreement is undoubtedly within the scope of the federal act. *See* 9 U.S.C. §§ 1 & 2. Thus, pursuant to the Supremacy Clause, the terms of the FAA govern. U.S. Const. art. VI, cl. 2.

### 2. J.W.'s purported waiver of its contractual right to arbitration

The FAA states that every written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

8

arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA requires federal courts to stay an action when an issue in the proceeding is referable to arbitration, *see* 9 U.S.C. § 3, and to compel arbitration when one party fails or refuses to comply with the provisions of an enforceable arbitration agreement. *See* 9 U.S.C. § 4; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). Supreme Court cases have found that these provisions "manifest a 'liberal federal policy favoring arbitration agreements.' " *High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 796-97 (E.D. Mich. 2008) (citing *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002).

However, this does not mean that a federal court faced with an arbitration clause must find that it always governs the resolution of a dispute between the parties. *Id.* at 797. "The language of the contract defines the scope of disputes subject to arbitration." *Id.* (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

In the present matter, the dispute resolution procedure laid out in the Customer Delivery Services Agreement applies to "*[a]ny disputes* arising out of or in connection with [the] Agreement [.]" (Custom Delivery Services Agreement, ECF No. 47-4 at Pg. ID No. 694, § 26.1 (emphasis added.)) Further, the dispute

9

resolution procedure outlined in the agreement states that the arbitration award "shall be final and binding on the parties." (*Id.*) Thus, in accordance with the agreement's arbitration clause, all claims listed in IKEA's third party complaint against J.W. are subject to the binding arbitration clause unless IKEA can provide a reason why the Court should not compel arbitration.

IKEA asserts that the arbitration clause is inapplicable to the instant matter because J.W. has waived its contractual right to arbitration. (ECF No. 48 at Pg. ID 703–707.) With respect to waiver of the right to arbitration, the Sixth Circuit has expressed that there is a strong presumption in favor of enforcing arbitration agreements, and thus, "waiver of the right to arbitration is not to be lightly inferred." *Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 450 (6th Cir. 2005).

Additionally, the Sixth Circuit holds that a party may waive the right to arbitration by engaging in a course of conduct completely inconsistent with reliance on an arbitration agreement or delaying assertion of the right to such an extent that the opposing party incurred actual prejudice. *Shy v. Navistar Int'l Corp.,* 781 F.3d 820, 827–28 (6th Cir.2015); *Johnson Associates,* 680 F.3d at 717; *Hurley v. Deutsche Bank Trust Co.,* 610 F.3d 334, 338 (6th Cir. 2010). "Both inconsistency and actual prejudice are required." *Shy,* 781 F.3d at 828. Both prongs are not met in this case.

Recent Sixth Circuit decisions in *Johnson Associates*, *Hurley*, and *Shy*, cited above, lay out the proper analysis for determining whether a defendant waived its contractual right to arbitration. Specifically, the Sixth Circuit holds:

> The parameters of our scrutiny are well defined by three recent Sixth Circuit rulings, cited above. The district court relied on *Johnson Associates* and *Hurley,* where we affirmed denials of motions to compel arbitration. In *Shy,* decided since the district court's ruling, we vacated the denial of a motion to compel. Comparison of all three decisions confirms the correctness of the district court's ruling in this case.
>
> In *Hurley,* the defendant had participated in litigation for two years before asserting its right to arbitration. The plaintiffs' actual prejudice consisted of their participation in extensive discovery, defending against four summary judgment motions, and being subjected to a change in venue at the defendant's request. *Hurley,* 610 F.3d at 338–40. In *Johnson Associates,* the defendant delayed eight months before raising the issue of arbitration. In the meantime, the defendant's participation in litigation consisted of filing an answer without raising arbitration as an affirmative defense, engaging in settlement negotiations, participating in a scheduling conference, and serving discovery requests. Again, even absent a showing of "substantive prejudice," we held "actual prejudice" was made out by the delay and expenses incurred. *Johnson Associates,* 680 F.3d at 718–20.
>
> In *Shy,* on the other hand, we vacated the district court's denial of a motion to compel where arbitration was first raised ten months after a third party moved to intervene in existing litigation, but promptly after the court granted intervention and the intervenor's complaint was filed. Distinguishing *Johnson Associates,* we held that the defendant's "pre-litigation" (i.e., before intervention was allowed) conduct was not inconsistent with reliance on arbitration, that the defendant did not actively pursue litigation during the pendency of the motion to intervene, and that consequently, the intervenor did not incur unnecessary expenses amounting to actual prejudice. *Shy,* 781 F.3d at 829–30.

11

*Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 264 (6th Cir. 2015)

### a. Inconsistency

With respect to the first prong – inconsistency with reliance on an agreement to arbitrate – IKEA asserts that J.W. has actively participated in litigation for almost a year without attempting to enforce the arbitration clause. IKEA asserts that J.W. has demonstrated this by failing to raise the arbitration agreement as an affirmative defense in its original answer to the third party complaint and doing "nothing to enforce his rights under Section 26 of the Agreement." (ECF No. 48 at Pg. ID 703, 705.) IKEA also asserts that "now that the time has come for JW to explain to the Court why it has refused to honor its indemnity obligations, JW brings [its] 11th hour request for dismissal[.]" (*Id.* at 704.) The Court disagrees.

Inconsistency with reliance on an agreement to arbitrate "typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate." *JPD, Inc. v Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) (further citations omitted). The Sixth Circuit in *Hurley* held that defendants "consistently and actively litigated [the] action in court," by not only responding to the plaintiff's motions, but also by filing "multiple dispositive and non-dispositive motions of their own, including motions to dismiss, motions for summary judgment, and a motion to change venue." *Hurley*, 610 F.3d at 339. "By filing a motion to change venue,

12

[d]efendants proactively selected the forum in which they wished to defend against [p]laintiffs' claims." *Id.* Additionally, in *Hurley*, the Court observed that, as in other cases where waiver was found, the defendants "did not attempt to enforce their arbitration rights until after the district court entered an unfavorable decision." *Id.*

"Regardless of whether a defendant is required to raise arbitration as a defense under Rule 8(c), a defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate. The filing of an answer is, after all the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue." *Johnson Associates Corp.*, 680 F.3d at 719.

Contrary to IKEA's assertion that J.W. participated in litigation for almost a year without attempting to enforce the arbitration clause, it is readily apparent that J.W.'s conduct was consistent with reliance on an agreement to arbitrate. While it is true that J.W. did not raise arbitration as an affirmative defense in its initial answer to the third party complaint, J.W. timely amended its answer merely three weeks later, and consistently and actively demonstrated its reliance on the arbitration agreement thereafter by raising the arbitration defense in response to Hall's first amended complaint, as well as in response IKEA's motion for summary judgment against J.W. – the only document (other than IKEA's third party

13

complaint) filed against J.W. by IKEA. (ECF No. 36 at Pg. ID No. 380; ECF No. 47 at Pg. ID 622.) Thus, J.W. has clearly engaged in conduct consistent with reliance on an agreement to arbitrate.

Additionally, concerning litigation, IKEA asserts that J.W. has actively litigated the action in Court, having done the following:

> [J.W.] has answered the complaint and cross-claim, filed a witness list and Rule 26 disclosures, sent discovery requests, appeared for Hall's deposition, concurred in IKEA's motion for summary judgment as to Hall's claim and has now filed its own motion for summary judgment seeking to enforce this right. J.W.'s conduct in this regard shows intent to litigate, not arbitrate.

(ECF No. 48 at Pg. ID 705.)

J.W.'s conduct does not amount to waiver of arbitration. As asserted previously, J.W. asserted its contractual right to arbitration in: (1) its answer to Hall's amended complaint; (2) its answer to IKEA's third party complaint; and (3) in response/cross-motion to IKEA's motion for summary judgment.

Regarding J.W.'s involvement in discovery and appearing for Hall's deposition – given that the contractual agreement was entered into by J.W. and IKEA solely, J.W. had to comply with the discovery schedule and partake in discovery with respect to Hall, since Hall's action was not subject to the arbitration clause of the contract between J.W. and IKEA. Regardless of J.W.'s arbitration agreement with IKEA, J.W. was still a named defendant in Hall's lawsuit, and thus had to litigate the claims Hall asserted against it – and J.W. was thereby litigating

issues that were not subject to arbitration. (*See* ECF No. 28). Concerning IKEA, J.W asserts that it has not served or answered any discovery with respect to the third party complaint brought by IKEA. (ECF No. 52 at Pg. ID 734.) Additionally, J.W. asserts that while IKEA served requests for production on J.W., J.W. has not responded to those requests – since there is a binding arbitration clause that governs the action between itself and IKEA – and thus has not engaged in discovery. IKEA has not sought to file a sur reply or supplied any additional information to challenge J.W.'s assertion that J.W. has not engaged in discovery with respect to the third party complaint. Thus, for the abovementioned reasons, the Court finds that J.W.'s conduct does not amount to a waiver of arbitration.

### b. Prejudice

Regarding actual prejudice, IKEA asserts the following:

> [I]KEA would certainly be prejudiced by being forced into some form of alternative dispute resolution a year into this litigation. In addition to the obvious delay, IKEA has incurred expenses associated with filing pleadings, motions, engaging in discovery and taking Hall's deposition – the combination of which has caused "actual prejudice."

(ECF No. 48 at Pg. ID 706.)

IKEA's assertion that it suffered prejudice as a result of J.W.'s failure to raise arbitration earlier fails, given that J.W. asserted its contractual right to arbitration in its amended answer to IKEA's third party complaint, and continued to do so thereafter. Further, with respect to IKEA's argument that it suffered

15

prejudice by way of expenses that resulted from filings, pleadings, motions, discovery, and Hall's deposition, these expenses were incurred as a result of the complaint between Hall and IKEA – which was not subject to the arbitration agreement – rather than the third party complaint involving J.W. and IKEA. As previously indicated, J.W. has not engaged in any discovery with IKEA with respect to the third party complaint. Thus, any expenses J.W. has incurred as a result of Hall's complaint would nevertheless have been experienced regardless of the binding arbitration agreement and J.W.'s assertion of his contractual right to arbitration. Accordingly, IKEA has failed to meet either prong of the Sixth Circuit's waiver inquiry. Given that any dispute arising from the agreement is subject to arbitration, IKEA's action against J.W. must be stayed and arbitration must be compelled. See 9 U.S.C. § 4; *Highlands Wellmont Health Nework, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568 (6th Cir. 2003); *High*, 594 F. Supp. 2d at 797.

### 3. Federal Rule of Civil Procedure 14(a)(1)

Lastly, IKEA asserts that "the spirit" of Federal Rule of Civil Procedure 14(a)(1) allows it to file a third party complaint against Plaintiff irrespective of a binding arbitration clause. (ECF No. 48 at Pg. ID 710–11). The Court disagrees.

Rule 14(a)(1) provides, in relevant part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of

> the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1).

While Rule 14 permits the filing of a third party claim, it does not do away with a federal court's obligation "to stay an action when an issue in the proceeding is referable to arbitration." *High*, 594 F. Supp. 2d at 797; *See* 9 U.S.C. § 4. IKEA has failed to provide the Court with any case law demonstrating otherwise. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are [ ] deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)) (further citations omitted). Thus, IKEA's "spirit of Rule 14" argument fails.

Accordingly,

For the abovementioned reasons**,** IKEA Property Inc.'s summary judgment motion (ECF No. 39) is **DENIED** and J.W. Logistics, LLC's motion for summary judgment (ECF No. 47) is **GRANTED** in that the Court holds that IKEA's third party claims against J.W. are subject to arbitration. J.W. is therefore dismissed as a

party to this action.

    **IT IS SO ORDERED**.

                                              s/ Linda V. Parker
                                              LINDA V. PARKER
                                              U.S. DISTRICT JUDGE

Dated: March 17, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 17, 2016, by electronic and/or U.S. First Class mail.

                                              s/ Richard Loury
                                              Case Manager